UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRANSOCEAN DEEPWATER, INC. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 08-4448 |
| | * | |
| INGERSOLL-RAND COMPANY | * | |
| | * | SECTION "B"(3) |

ORDER AND REASONS

For the reasons set forth below, **IT IS ORDERED** that Defendant Airdyne's Motion for Summary Judgment (Rec. Doc. No. 44) is **DENIED**.

A.  Summary Judgment Standard

The instant Motion for Summary Judgment (Rec. Doc. No. 44) was filed on November 15, 2010 before the current version of Rule 56 of the Federal Rules of Civil Procedure took effect on December 1, 2010; as such the motion will be viewed under the prior version of that rule.

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).  Although the Court must consider the evidence with all

reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B. Requisites for Maintenance of an Action for Contribution

In *Combo Maritime, Inc. v. U.S. Bulk Terminal*, 615 F.3d 599, 603 (5th Cir.2010), the Court stated that:

> [I]n both *Ondimar* and *Lexington*, we indicated that when a settling tortfeasor obtains a full release FN2 from the plaintiff for all parties, an action for contribution might not conflict with *AmClyde*. We now make explicit what we have previously implied and hold that *AmClyde* does not prevent an action for contribution for a settling tortfeasor who obtains, as part of its settlement agreement with the plaintiff, a full release for all parties.

*Id.* Footnote 2 from the above quotation states that "[f]or the purposes of this opinion, 'full release' indicates that the plaintiff has released all potential tortfeasors from liability, regardless of whether the potential tortfeasor is a party to the settlement giving rise to the full release." *Id.* at 603, n.2. Thus, the language of the agreement must be considered to determine

whether, by its terms, it includes a release of all potential claims of Mulvaney against Movants such that dismissal of Movants' instant motion is warranted.

C. <u>Interpretation of the Settlement Agreement</u>

In *Guidry v. Halliburton Geophysical Services, Inc.*, 976 F.2d 938 (5th Cir.1992), a seaman brought suit seeking damages for personal injury as well as maintenance and cure; at the close of the plaintiff's case, and upon the court's urging, the parties entered into an oral settlement which was announced in open court. At issue on appeal was whether the district court's interpretation of the settlement, that the agreement reserved the plaintiff's right to future claims for cure but precluded future claims for maintenance, could be enforced. *Id*. at 940. The Fifth Circuit stated that "a settlement agreement is a contract. A district court's interpretation of an unambiguous contract is a question of law . . . . Where an agreement is ambiguous such that its construction turns on a consideration of extrinsic evidence, the district court's interpretation is reviewed for clear error." *Id*. The *Guidry* court added that the "initial determination that the ambiguous nature of a contract warrants introduction of extrinsic evidence is itself a question of law. *Id*. (citing *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Circle, Inc.*, 915 F.2d 986, 990 (5th Cir.1990).

Thus, under this line of jurisprudence, both questions

relevant to disposition of the instant motion, namely (1) Does the agreement by its terms include Movants such that the two prong inquiry of *Combo Marine* is satisfied allowing denial of Movant's Motion for Summary Judgment? and, to a lesser extent, (2) Is the contract ambiguous such that the use of extrinsic evidence, including the transcript of the execution of the agreement, is warranted in a determination of the parties' intent?, are questions of law not questions of fact.

For this reason, it would appear there exists no genuine issue of material fact, as such, Movants would be entitled to judgment as a matter of law.  However, before that determination can be made, the relevant provisions of the agreement need be examined as the Court's determination of issues of law may allow for resolution of the instant motion.

D.   <u>The Language of the Settlement Agreement</u>

The fifth paragraph of the   settlement agreement   between Plaintiff and Mr. Mulvaney, entitled "Receipt, Release and Indemnification Agreement" names and thereafter refers to a list of juridical and actual persons as "THE RELEASED PARTIES."  (Rec. Doc. No. 44-2 at 1-2.)  That paragraph states:

> WHEREAS, as a result of the aforementioned injuries, Bryan J. Mulvaney, understands that he could hire an attorney and make a claim against Transocean, Triton Hungary Asset Management Kft., Transocean Offshore Deepwater Drilling Inc., BP America Production Company, and Shuman Consulting Services L.P., and their parent, subsidiary, related and affiliated corporations, partnerships, and limited liability companies, an their

> co-owners, co-lessees, partners, co-ventures and joint
> ventures, as well as the officers, directors,
> shareholders, stockholders employees, agents, servants,
> invitees, successors and assigns, representat-
> -ives, managers consultants, insurers, underwriters
> (including primary and excess), subrogees, and
> contractors and subcontractors of all of them or any of
> the foregoing; the M/V TRANSOCEAN MARIANAS, its masters
> and crews, and all other rigs, barges and/or vessels
> owned and/or operated by said parties, their owners,
> charterers, operators, underwriters, masters and crews,
> and any company or companies for whom or with whom any
> such rig, barge or vessel was working at the time of
> Bryan J. Mulvaney's accident as aforesaid and its legal
> and beneficial owners and/or operators and insurers,
> including [sic] by not limited to Ingersoll-Rand Material
> Handling Company, and/or its agents, servants, employees,
> officers, managers, stockholders, insurers, underwriters
> (including primary and excess), parent, subsidiary and
> affiliated corporations, successors, and assigns
> (hereinafter "THE RELEASED PARTIES"), for the damages he
> has allegedly sustained as a result [of his injuries] .
> . . .

(Rec. Doc. No. 44-2 at 1-2). Movant, in discussing the settlement agreement states "[t]he parties are listed clearly. The claims against those parties are listed clearly. There is no [sic] need to adopt a belief of what is intended. The document reflects [sic] the clear intentions to release the named parties. Contrary to [Respondent's] argument, the language is clear and unambiguous. The released parties and Mr. Mulvaney's claims against *those* parties, are listed and defined by the document." (Rec. Doc. No. 59 at 2) (emphasis in original).

Movants contentions here would seem to be correct were it not for the other portions of the agreement, quoted by Respondents in their opposition and referenced *supra* where the agreement states

that Mulvaney "is desirous of accepting the sum of [$220,000.00] in full settlement and discharge of *all of his legal rights* arising out of or resulting from the injuries as aforesaid" and the indemnification clause excusing Mulvaney's duty to indemnify Respondents for claims asserted by them "against Ingersoll-Rand*or any other party* for contribution and/or indemnity . . . ." (Rec. Doc. No. 49 at 8) (emphases in original).

This difference between the document's use of "THE RELEASED PARTIES" to refer to the specific listing in the agreement and other phrases, such as "any other party," to the extent they create an ambiguity, allow the Court to examine extrinsic evidence, namely the affidavit of David J. Gauthreaux and the transcript of the conference at which the agreement was executed found at Rec. Doc. No. 49-1.

Mr. Gauthreaux in his affidavit states, in pertinent part, that he "was present when the [settlement agreement] was executed by Mr. Mulvaney on July 14, 2008. Mr. Mulvaney acknowledged that he was aware that by accepting $220,000.00 in funds he was effecting a total settlement of all of his claims and that he would not be able to bring suit against any party."  (Rec. Doc. 49-1 at 2).

The transcript of the execution of the July 14, 2008 agreement contains clarification of the parties intentions, those portions are quoted here:

> MR. WELCH: Okay. And so when the original agreement said that you were releasing a large number of people with the

> exception of Ingersoll-Rand and some related parties, that wasn't what you intended. You, in fact, intended to settle all calms you had against all persons; correct?
>
> MR. MULVANEY: Right.

Rec. Doc. 49-1 at 12, ll 8-17. The next such instance occurred on the following page:

> MR. WELCH: Your thought was you wanted to settle your entire claim, and if Transocean wants to go try to get some or all the money back, that's up to them?
>
> MR. MULVANEY: Correct.
>
> MR. WELCH: That's what you intended?
>
> MR. MULVANEY: Correct.

*Id*. at 13, ll 16-25 and 13, l 1. A third and similar exchange occurs a very short time later:

> MR. WELCH: . . . you understand, do you not, that what you're signing now is acknowledging what you originally intended and that was to release all claims you had against all parties; correct?
>
> MR. MULVANEY: Yes.

*Id*. at 14 ll 16-22.

## CONCLUSION

The ambiguity in the settlement agreement allows the court to examine extrinsic evidence to determine the intent of the parties upon execution of the settlement agreement. This extrinsic evidence, including the above quoted excerpts from the transcript,

indicates that the parties, specifically Mr. Mulvaney, did intend to release his rights to all claims against all parties against whom he might seek legal recourse for the injuries sustained on or about January 13, 2008 while working aboard the M/V TRANSOCEAN MARIANAS.  As such, the settlement agreement constitutes a full release as defined by the Fifth Circuit in *Combo Maritime, Inc. V. U.S. Bulk Terminal*, 615 F.3d 599, 603 (5th Cir.2010).  Thus, Respondent, as the settling tortfeasor has obtained a full release for all parties as part of its settlement agreement and may thus seek contribution from Movants.  Accordingly, Defendants Airdyne, Ltd., Airdyne Inc., Airdyne Lafayette, Inc., and RAM Winch & Hoist, Ltd.'s Motion for Summary Judgment (Rec. Doc. No. 44) is **DENIED**.

New Orleans, Louisiana this 15th day of December, 2010.