UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRANSOCEAN DEEPWATER, INC. | CIVIL ACTION |
| VERSUS | NO. 08-4448 |
| INGERSOLL-RAND COMPANY | SECTION "B" (3) |

ORDER

The Court's Order dated December 7, 2010 [Doc. #55] is hereby VACATED,[1] and the following substituted in its place:

On December 14, 2010, the Motion to Compel [Doc. #47] filed by Airdyne, Ltd., Airdyne, Inc., Airdyne Lafayette, Inc. and Ram Winch & Hoist, Ltd. (collectively, "Airdyne") came on for oral hearing by telephone before the undersigned. Present were Hal Welch and Andrew Stakelum on behalf of plaintiff and Emma Mekinda on behalf of Airdyne. Having reviewed the motion, the opposition, the document in dispute, the case law and the parties' oral argument, the Court rules as follows.

---

[1] In the Order dated December 7, 2010, the Court dismissed without prejudice the present motion because the motion had been filed after the discovery deadline had passed. Since that date, the District Court continued the discovery deadline for the sole purpose of resolving the motion here.

**I.     Background**

On September 22, 2008, plaintiff filed this marine personal injury claim against Ingersoll-Rand, the manufacturer of a winch manufactured and/or distributed by defendant. The winch malfunctioned aboard the M/V TRANSOCEAN MARIANAS on or about January 13, 2008, when Bryan Mulvaney and Transocean's Crew C were operating off the coast of Louisiana. Mulvaney's left foot was injured – the amputation of 3 toes. Transocean paid his maintenance and cure, voluntary supplemental benefits and all expenses incurred as a result of this accident. It settled with Mulvaney, and Transocean now seeks indemnity/contribution from defendants.

**II.     The Parties' Contentions**

Airdyne seeks production of plaintiff's Root Cause Analysis Report ("the Report"), to which plaintiff objected on the ground that it was prepared in anticipation of litigation. During the Rule 30(b)(6) deposition of plaintiff's representative, Jeff Riley, counsel objected to testimony about the Report because it was prepared during an investigation in which outside counsel was present aboard the vessel. Riley testified that the Reports are prepared to find out what really happened and to prevent accidents from happening in the future. Riley testified that the Reports are even sometimes prepared in anticipation of a hazard.

Citing case law, Airdyne argues that the work-product doctrine does not protect the Report because it was prepared in the ordinary course of business. Citing *Carroll v. Praxair*, No. 2:05-cv-307, 2006 WL 1793656 (W.D. La. June 28, 2006), Airdyne argues that the facts mirror those here. In *Carroll*, the Court held that the work-product doctrine did not protect a report prepared after an accident because it was prepared in the ordinary course of business despite the presence of an attorney. Airdyne argues that the testimony of Riley reveals that such reports are assembled in a

variety of situations and not simply in anticipation of litigation. Airdyne contends that the presence of outside counsel did not transform a document produced in the ordinary course of business into a privileged document.

The day after the accident, plaintiff sent representatives to the vessel to investigate the accident. Outside counsel from Lemle & Kelleher and Martin Lowe, the claims manager of Shuman Consulting, plaintiff's third-party claims adjusting provider, accompanied the representatives. Plaintiff contends that outside counsel and Lowe only attend investigations when litigation is anticipated. Counsel participated and guided all activities of the representatives and expressed opinions as to the content of the report. Counsel later reviewed the draft Report, made hand-written revisions and relayed the revisions to plaintiff. No final report has been issued. Only a draft Report exists. Plaintiff argues that it has produced all other documents and that the Report includes no facts that have not been produced.

Citing the law addressing the attorney-client privilege, plaintiff argues that the Report is a communication between it and counsel and that plaintiff has never disseminated the draft. That British Petroleum ("BP") has seen the draft, plaintiff argues, is of no moment because BP and plaintiff entered a joint defense agreement. Citing *Bross v. Chevron U.S.A. Inc.*, Civ. A. No. 06-1523, 2009 WL 854446, *4 (W.D. La. Mar. 25, 2009), plaintiff notes that courts have found that the attorney-client and work-product privileges protect root cause reports drafted after an accident.

Plaintiff also contends that the work-product doctrine protects the Report. The Report was a collaborative effort between counsel and plaintiff's representatives. Plaintiff contends that the severity of the accident rendered litigation imminent. Presence of counsel during the investigation was thus not happenstance. Plaintiff notes that it does not dispatch a team of investigators when the

injuries are minor. Plaintiff notes that Airdyne can not demonstrate the "substantial need" necessary to disclose ordinary work product, and, even were Airdyne able to do so, the "substantial need" requirement is inapplicable here because the Report is opinion work product. Plaintiff has produced the incident report that identifies witnesses and key information and a factual narrative of the accident. Plaintiff has produced every statement from every crew member. The Report represents plaintiff's and counsel's opinion as to these facts, and plaintiff contends that Airdyne must create its own opinion as to the facts. Plaintiff's HSE manager, Chris Knight, has already disclosed any non-privileged factual findings and recommendations for future action in a report entitled "NAM HSE ALERT."

In its reply, Airdyne argues that plaintiff has waived any privilege because of the presence of Mark Lowe during the investigation and because plaintiff's expert, Fred Liebkemann, relied on the Report in his expert report.

In its sur-reply, plaintiff contends that the presence of Lowe and Liebkemann's reliance on the Report in his own report fail to waive the privilege. Both Lowe and Liebkemann are plaintiff's representatives and acted in such capacity in helping to prepare the Report.

### III.   Law and Analysis

The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Conoco v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 117-18 (W.D. La. 1998). This doctrine protects from discovery documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators, in anticipation of litigation. *Id.* at 118; *see also Hickman v. Taylor*, 329 U.S. 495 (1947). The work-product doctrine does not protect materials assembled in the ordinary course of business, pursuant to

regulatory requirements, or for other non-litigation purposes.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992);  *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997) (citing *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982).  The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation.  *Boh Bros.*, 119 F.R.D. at 117; *In Re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 280 (S.D.N.Y. 1995).

   The threshold determination that the court must make is whether the documents sought to be protected were, in fact, prepared in anticipation of litigation or whether they were prepared in the ordinary course of business.  *Upjohn Co. v. United States*, 449 U.S. 383 (1981);  *Caremark, Inc. v. Affiliated Computer Sys., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000).  The Fifth Circuit has indicated that a document is prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981).  To determine the primary motivation for the creation of a document, courts look to various factors, including, "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653414, *5 (E.D. Tex. 2003) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825, *2 (E.D. La. 2000).  "The involvement of an attorney is not dispositive of the 'in anticipation of litigation' issue.  Nevertheless, involvement of an attorney is a highly relevant factor . . . making materials more likely to have been prepared in anticipation of litigation." *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000).

   The Court finds that under the circumstances here, plaintiff has met its burden that the work-

product doctrine protects the Report. While the Court recognizes that the work-product doctrine does not protect all Root Cause Analysis Reports as many are created in the ordinary course of business, the Court's review of the law here *and the Report itself* reveals that the work-product doctrine protects this Report. Simply because all Reports may not be privileged does not mean that this one is not. The severity of the injury – the amputation of three toes through a steel boot – rendered litigation imminent. Moreover, the participation of counsel in the investigation, the drafting of the Report and the revisions to the draft by counsel buffer this Court's conclusion that the Report is non-discoverable. Production of the Report would lead to the disclosure of the mental impressions of plaintiff's attorneys.

Moreover, the Fifth Circuit has held that the "mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 379 (5th Cir. 1989) (citations omitted). Accordingly, even though plaintiff showed the Report to its agent, Lowe, and its expert, Liebkemann, such voluntary disclosure did not waive the work-product privilege.

New Orleans, Louisiana, this 21st day of December, 2010.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**